**No. 2022-1630**

# In the United States Court of Appeals for the Federal Circuit

HARRIS BRUMFIELD, TRUSTEE FOR ASCENT TRUST,

*Plaintiff-Appellant*,

v.

IBG LLC, INTERACTIVE BROKERS LLC,

*Defendants-Appellees*.

Appeal from the United States District Court for the Northern District of Illinois in Case No. 1:10-cv-00715, United States District Judge Virginia M. Kendall

**CORRECTED REPLY BRIEF OF PLAINTIFF-APPELLANT HARRIS BRUMFIELD**

Leif R. Sigmond, Jr.
Michael D. Gannon
Jennifer M. Kurcz
Baker & Hostetler LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6275

Alaina J. Lakawicz
Baker & Hostetler LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
(215) 568-3100

*Attorneys for Plaintiff-Appellant Harris Brumfield*

January 23, 2023

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1630, -1639

**Short Case Caption** Trading Technologies International, Inc. v. IBG LLC

**Filing Party/Entity** Harris Brumfield, Trustee for Ascent Trust

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/27/2022

Signature: /s/ Leif R. Sigmond, Jr.

Name: Leif R. Sigmond, Jr.

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Harris Brumfield, Trustee for Ascent Trust | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| Christopher D Butts | Alan Wayne Krantz | McDonnell Boehnen Hulbert & Berghoff LLP |
| Andrea Kay Orth | Ann Christine Palma | Brandon J Kennedy |
| Lee Sullivan Shea & Smith LLP | Brendan E Clark | Cole Bradley Richter |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Case: 22-1630 Document: 47 Page: 4 Filed: 01/23/2023

## FORM 9. Certificate of Interest, Continued

**4. Legal Representatives. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).**

- Steven F. Borsand
- David Michael Friebus
- Harrison Bryant Rose
- Jared A. Brandyberry
- Jason F. Hoffman
- Jay Quentin Knobloch
- Trading Technologies International, Inc.
- Kirsten L. Thomson
- GrowIP Law Group LLC
- Marcus Jay Thymian
- Matthew J. Sampson
- Monika Anna Dudek
- Paul A. Kafadar
- S. Richard Carden
- Sarah Emily Fendrick
- Stephanie J Nelson

# TABLE OF CONTENTS

I. THE '411/'996 PATENTS ARE ELIGIBLE UNDER § 101 ........................1

A. IB Does Not Dispute That If a Claim Recites a Technological Invention, That Claim Cannot Be Abstract Under *Alice* Step 1 ..........1

B. IB Does Not Dispute That Prior GUIs Had Technical Problems .........3

C. IB Admits That With the '411/'996 Inventions, the Prices Do Not Change Positions Every Time the Market Changes.......................4

D. The '411/'996 Inventions Are Improvements over the Prior Art Even Without "Static" ........................................................................6

E. The Cases Relied Upon by IB Are Distinguishable.............................8

F. IB Does Not Dispute the Overwhelming Evidence Showing the Unconventional Nature of the '411/'996 Inventions ..........................12

G. If the '411/'996 Patents Are Found to Be Valid and Infringed, Damages Would Need to Be Retried ................................................13

II. THE DISTRICT COURT'S EXCLUSION OF FOREIGN DAMAGES UNDER *WESTERNGECO* MUST BE REVERSED...............14

A. Foreign Damages Are Recoverable Under Section 271(a)................15

B. TT Was Not Permitted to Fully Pursue Its Claim of Foreign Damages, Which Was Harmful Error ................................................17

C. TT Did Not Waive Its Right to Challenge the District Court's Exclusion of Foreign Damages .........................................................19

III. THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING PLAINTIFF'S MOTION FOR A NEW DAMAGES TRIAL BASED ON A FINDING THAT IB COMMITTED FRAUD. .......20

A. IB's Post-Trial Admissions That IB Does Not Track by Tool Used to Submit the Order Confirm That IB Misrepresented Order Tracking .......................................................................20

B. Accumulate/Distribute Proves That IB Has Grossly Misrepresented Its BookTrader Data to Be Something That It Is Not ....24

C. TT Did Not Have the Burden to Discover IB's Misrepresentations Sooner ....26

D. IB's Other Arguments Are Designed to Distract from IB's Own Misrepresentations....28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
490 F. Supp. 3d 593 (E.D.N.Y. 2020) ....................14

*Antrim Pharms. LLC v. Bio-Pharm, Inc.*,
950 F.3d 423 (7th Cir. 2020) ....................19

*Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*,
211 F. App'x 955 (Fed. Cir. 2007) ....................2

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ....................12

*Blameuser v. Hasenfang*,
345 F. App'x 184 (7th Cir. 2009) ....................18

*Burke, Inc. v. Bruno Indep. Living Aids, Inc.*,
183 F.3d 1334 (Fed. Cir. 1999) ....................2

*Cap Exp., LLC v. Zinus, Inc.*,
996 F.3d 1332 (Fed. Cir. 2021) ....................27

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*,
797 F.3d 426 (7th Cir. 2015) ....................20

*Chrimar Holding Co., LLC v. ALE USA Inc.*,
732 F. App'x 876 (Fed. Cir. 2018) ....................13

*Connecticut Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ....................16

*Deepsouth Packing Co. v. Laitram Corp.*,
406 U.S. 518 (1972) ....................17

*In re DePuy Orthopaedics, Inc.*,
888 F.3d 753 (5th Cir. 2018) ....................23

*Downing v. Abbott Lab'ys*,
48 F.4th 793 (7th Cir. 2022) ....................................................................18

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
697 F.3d 1342 (Fed. Cir. 2012) ....................................................................14

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ......................................................................9

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ....................................................................19

*Fields v. City of Chicago*,
981 F.3d 534 (7th Cir. 2020) ........................................................................27

*Fuesting v. Zimmer, Inc.*,
448 F.3d 936 (7th Cir. 2006) ........................................................................19

*IBG LLC v. Trading Techs. Int'l, Inc.*,
757 F. App'x 1004 (Fed. Cir. 2019) ..........................................................*passim*

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ......................................................................11

*Lonsdorf v. Seefeldt*,
47 F.3d 893 (7th Cir. 1995) ................................................................23, 26, 27

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
695 F.3d 1285 (Fed. Cir. 2012) ....................................................................18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013) ....................................................................14

*Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*,
No. 05-cv-4088, 2011 WL 722467 (N.D. Ill. Feb. 23, 2011)............................28

*Saxon v. Sw. Airlines Co.*,
993 F.3d 492 (7th Cir. 2021) ........................................................................19

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ................................................................7, 15

*Trading Techs. Int'l, Inc. v. CQG, Inc.* (*CQG*),
675 F. App'x 1001 (Fed. Cir. 2017) ....................2, 3

*Trading Techs. Int'l, Inc. v. IBG LLC* (*IBG II*),
921 F.3d 1084 (Fed. Cir. 2019) ....................8,10

*Trading Techs. Int'l, Inc. v. IBG LLC* (*IBG III*),
921 F.3d 1378 (Fed. Cir. 2019) ....................8, 9

*Trading Techs. Int'l, Inc. v. IBG LLC* (*IBG IV*),
767 F. App'x 1006 (Fed. Cir. 2019) ....................11

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
728 F.3d (Fed. Cir. 2013) ....................6

*Ty Inc. v. Softbelly's Inc.*,
353 F.3d 528 (7th Cir. 2003) ....................23

*Viskase Corp. v. Am. Nat'l. Can Co.*,
979 F. Supp. 697 (N.D. Ill. 1997), *aff'd*, 261 F.3d 1316 (Fed. Cir. 2001) ....................27

*WesternGeco LLC v. ION Geophysical Corp.*,
138 S. Ct. 2129 (2018) ....................15, 16, 17

*Zygo Corp. v. Wyko Corp.*,
79 F.3d 1563 (Fed. Cir. 1996) ....................13

**Other Authorities**

Fed. Cir. R. 32.1(d) ....................2

Rule 60(b)(3) ....................23, 26, 27

# ARGUMENT

## I. THE ’411/’996 PATENTS ARE ELIGIBLE UNDER § 101

### A. IB Does Not Dispute That If a Claim Recites a Technological Invention, That Claim Cannot Be Abstract Under *Alice* Step 1

Plaintiff TT cited numerous cases holding that claims that solve technical problems with technical solutions are eligible under *Alice* step 1. BB 35-36. Indeed, technological inventions that solve technical problems with technical solutions cannot be considered abstract ideas, as even the district court understood: “claims that improve the way a computer operates *or solve a technological problem* are patent eligible.” Appx9 (emphasis added). Critically, IB does not challenge this proposition, let alone mention TT’s cases. Moreover, no case has found inventions that solve technical problems with technical solutions to be abstract ideas.

IB also does not dispute that this Court has already analyzed the claims of the ’411/’996 patents in *IBG LLC v. Trading Techs. Int’l, Inc.*, 757 F. App’x 1004 (Fed. Cir. 2019) (hereinafter “*IBG*,” which IB refers to as *IBG I*) and found that they recite a technological invention that solves a technical problem with a technical solution. *Id.* at 1007-08. IB does not contend that *IBG* was wrong. Instead, IB’s response is that *IBG* dealt with the technological exception to CBM jurisdiction and not § 101. RB 34. But this is a “distinction” without a difference

because, as IB now concedes, a finding that an invention is technological necessarily means that the invention is not abstract. BB 34-37.

IB's only other attempt to explain away *IBG* is that *IBG* was not precedential. RB 34. But this should not matter, especially when this Court was interpreting the '411/'996 claims and found that they are technological inventions. This Court can *and should* rely on nonprecedential opinions that *interpret the same patents* to ensure uniform treatment of those patents. Fed. Cir. R. 32.1(d) ("The court … may look to a nonprecedential or unpublished disposition for guidance or persuasive reasoning . . . ."); *Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 211 F. App'x 955, 957 (Fed. Cir. 2007) (adopting claim construction made by another panel in nonprecedential decision regarding same patent limitation); *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1337 (Fed. Cir. 1999) (noting propriety of citing nonprecedential case and relying on its claim construction). For example, in *IBG*, this Court correctly relied on *Trading Techs. Int'l, Inc. v. CQG, Inc.* (*CQG*), 675 F. App'x 1001 (Fed. Cir. 2017)—a non-precedential opinion—because *CQG* analyzed the same claims of the '132/'304 patents and found that they solved a technical problem with a technical solution. *IBG*, 757 F. App'x at 1007.

IB's own actions undercut its view that non-precedential opinions should be ignored. The non-precedential *CQG* decision upheld the closely related '132/'304

patent claims as eligible under § 101. Yet IB dropped its cross-appeal challenging the eligibility of these claims, even though the arguments it makes for the ’411/’996 claims (although they have no merit) could apply equally to the ’132/’304 claims. *Compare* Dkt. No. 25, *with* Docketing Statement at 1, *Trading Techs. Int’l, Inc. v. IBG LLC*, No. 22-1639 (Fed. Cir. Apr. 27, 2022).

As TT anticipated, IB spends much of its brief trying to divert this Court’s attention away from *IBG’s* findings regarding the ’411/’996 claims and leading the Court in the wrong direction by citing subsequent cases in which other TT patents with *different claims* (that, notably, IB fails to address) were found to be ineligible under § 101. TT addresses these decisions below. *See infra* Section I.E.

### B. IB Does Not Dispute That Prior GUIs Had Technical Problems

Curiously absent from IB’s brief is any discussion of the prior art Figure 2-style GUI analyzed by this Court in *IBG* and *CQG*, both of which found that this prior GUI had technical problems. *IBG*, 757 F. App’x at 1007; *CQG*, 675 F. App’x at 1004. Namely, because of how this GUI (shown below) was constructed, the prices change positions or “flip” in their cells every time the market changes. Appx66563-66565. The result is that the trader can miss her intended price at the most critical times—*i.e.*, every time the inside market changes.

FIG. 2




*Id.*; Appx66559-66560; Appx66574-66576. Similarly, the construction of this prior art GUI created the additional technical problem of a lack of visualization, as the direction of market movements was not displayed by the GUI. Appx66566; Appx66575; Appx66577; Appx82224-82227. IB does not dispute that this prior GUI had these problems, and also does not dispute that these problems were technical in nature.

### C. IB Admits That With the '411/'996 Inventions, the Prices Do Not Change Positions Every Time the Market Changes

IB concedes that with TT's '411/'996 inventions, the prices do not change positions every time the market changes like the Figure 2-style GUI. RB 5-6. Instead, when there is a change in market, the inside market indicators move relative to the prices that do not move, as shown below:

FIG. 3




Time 1

FIG. 4




Time 2

Appx3031-3032; Appx82221-82231. As shown above, and as IB now concedes, the prices *did not* change positions when the market changed. It is this "relative movement" that improved the accuracy over the Figure 2-style GUI because the trader is more likely to obtain her intended price, as this Court in *IBG* found: "the claimed invention in the patents at issue ['411, '996, '132, and '304 patents] solves this problem 'by displaying market depth on a vertical or horizontal plane, which fluctuates logically up or down, left or right across the plane as the market fluctuates.'" 757 F. App'x at 1007 (quoting Appx415-416). This relative movement also provides visualization of market movements, which was lacking in

the Figure 2-style GUI, as this Court in previously recognized in *Trading Techs. Int'l, Inc. v. Open E Cry, LLC,* 728 F.3d 1309, 1313-14 (Fed. Cir. 2013).

### D. The '411/'996 Inventions Are Improvements over the Prior Art Even Without "Static"

IB does not dispute that in *IBG*, the lack of "static" [1] in the claims of the '411/'996 patents was addressed by IB in its briefing, discussed at oral argument, and considered for a third time in IB's rehearing petition. BB 40-41. And this Court repeatedly found that the lack of "static" is irrelevant to whether the '411/'996 claims recite technological inventions. *IBG*, 757 F. App'x at 1008. This Court was correct.

There is no dispute that the '132/'304 claims are virtually identical to the '411/'996 claims, with one exception: the former are limited to a "static" price axis and the latter are not. Appx64893-64897. This can be seen most readily by comparing claim 1 of the '304 patent (reciting a "*static* price axis") to claim 1 of the '411 patent (reciting just a "price axis"). Appx1760-1761; Appx3040-3041. Although IB dropped its cross-appeal challenging the eligibility of the "static" '132/'304 patents, IB asserts that the absence of that one word in claim 1 of the

[1] "Static" in the '132/'304 patents was defined as a price axis that cannot move unless moved manually. Appx64894-64895. The reference to "static" in this reply brief is referring to this definition.

’411 patent somehow casts claim 1 of the ’411 patent (and the other claims of the ’411/’996 patents) into the world of abstractness. RB 32-33.

The reality is that the ’132/’304 claims and the ’411/’996 claims are both improvements over the Figure 2-style prior art GUI. The flaw in IB’s argument is that it compares the difference between the two sets of claims (claims that recite “static” versus claims that do not). RB 32-33. But the relevant question is, how does each set of claims compare to the Figure 2-style prior art? *E.g.*, *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (examining the focus of the claimed advance over the prior art). The answer is clear: both sets of claims improve over the Figure 2-style GUI because both sets of claims improve the accuracy over the prior GUI, where the prices change positions or “flip” every time the market changes. For instance, with the ’132/’304 claims, as well as the ’411/’996 claims, when there is a change in the market, the indicators of the inside market move relative to prices that do not move. This is the exact opposite of the Figure 2-style GUI, in which every time the market changes, the indicators of the inside market remain in the exact same location and the prices change positions (or “flip”). “Static” in the ’132/’304 claims only limits the price axis to moving in response to manual re-centering commands—it has no impact on the claimed relative movement.

That the ’411/’996 claims are broader than the ’132/’304 claims is relevant to infringement, but not to the threshold question of whether the ’411/’996 claims are technological improvements that are eligible under § 101. The difference in claim scope only impacts the degree of improvement over the Figure 2-style GUI, not whether there is any improvement. As such, this Court was correct in *IBG* when it ultimately held that the ’411/’996 claims recite technological inventions even without “static”: “we see no meaningful difference between the claimed subject matter of the ’132 and ’304 patents and that of the ’411 and ’996 patents for the purposes of the technological invention question.” 757 F. App’x at 1008.

The case law establishes that claims that provide a specific technical solution to a technical problem to “improve” the relevant technology are patent eligible. Appx9; BB 35-36 (citing cases). Importantly, there is no requirement that an improvement must be a perfect solution—IB does not even address these cases in its brief.

### E. The Cases Relied Upon by IB Are Distinguishable

IB makes much of the fact that TT did not cite to or mention *Trading Techs. Int’l, Inc. v. IBG LLC* (*IBG II*), 921 F.3d 1084 (Fed. Cir. 2019) or *Trading Techs. Int’l, Inc. v. IBG LLC* (*IBG III*), 921 F.3d 1378 (Fed. Cir. 2019), precedential cases in which TT patents with *different claims* were found ineligible under § 101. But there was no reason to because these cases dealt with claims that are completely

different than the '411/'996 claims. Tellingly, although IB predictably cuts and pastes numerous snippets from these two cases, IB never describes the claims at issue. Nor does IB attempt to compare the claims in those cases with the '411/'996 claims, which this Court has said should be undertaken in a § 101 analysis: "both this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). IB's failure to compare claims is not surprising given that the claims in those cases are completely different.

For example, in *IBG III*, the '556 patent there was from a different patent family with a different specification than the '132/'304/'411/'996 patents. The '556 claims are vastly different than the '132/'304/'411/'996 claims. Indeed, this Court found that the '556 claims "essentially takes the prior art trading screen of Figure 2, calculates P&L for 'a range of price levels,' and displays the P&L values along an axis." *IBG III*, 921 F.3d at 1383. This Court found that, unlike here where the '411/'996 patents provide a technological improvement, merely adding P&L values along an axis did not address any technical problem with the prior art.[2]

[2] Judge Moore, who authored *IBG III*, was also on the panel of the *per curium IBG* decision that IB attempts to avoid. *IBG*, 757 F. App'x at 1005.

*IBG II* is likewise distinguishable. That case dealt with three TT patents, two of which are from a different patent family with completely different claims and different specifications than the '132/'304/'411/'996 patents. Although the third patent, the '374 patent, has the same specification as the '132/'304/'411/'996 patents, the '374 claims are far different than the '132/'304/'411/'996 claims. Specifically, this Court found that the "only" information that the '374 claims required to be displayed was a "plurality of graphical locations" for order entry, and that the graphical locations "simply could be black boxes with price values associated with them, and *no information provided to the user* indicating that price value, the order quantity, or the order type." *IBG II*, 921 F.3d at 1091 (internal quotations omitted). This Court also found that the "mapping" feature of the claim did not address the problem of the Figure 2-style GUI because the claim "does not specify what happens immediately after" the market changes. *Id.*

Here, the '411/'996 claims recite the specific limitations that enable the claimed improvement, *i.e.*, the display of indicators that move relative to the price axis—which was lacking in the '374 claims. Appx2478; Appx3040-3041. And the '411/'996 claims patents specify exactly what happens when the market changes—the inside market indicators move relative the price axis that does not move. *Id.* In short, this Court found a significant difference between the '374

claims, which were described as "black boxes" providing no information to the user, and the '411/'996 claims, which were found to be technological inventions.[3]

Finally, IB's reliance on *Trading Techs. Int'l, Inc. v. IBG LLC* (*IBG IV*), 767 F. App'x 1006 (Fed. Cir. 2019) is also misplaced. *IBG IV* is unpublished, and under IB's logic, should be ignored. Regardless, in addition to IB ignoring the claims in *IBG IV* and failing to compare them to the '411/'996 claims, *IBG IV* itself makes no reference to the claims of the four patents that were at issue in that case. Instead, *IBG IV* merely states, in a single paragraph, that the claims there focused "on improving the trader, not the functioning of the computer." *Id.* at 1007 (internal quotations omitted). But *IBG* already found that '411/'996 claims *do* improve the functioning of the computer. 757 F. App'x at 1007-08 (agreeing that "the claimed subject matter is directed to a specific improvement to the way computers operate" (internal quotations omitted)).

IB relies heavily on *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378-83 (Fed. Cir. 2022), a case having claims even farther removed from the '411/'996 claims. In *Zillow*, a first patent did not describe a "technical improvement," "specific programming," or "tailored software." *Id.* (internal quotations omitted). Instead, it was directed to automation of manual processes

[3] Judge Moore also authored *IBG II* and could assess the vast difference between the '374 claims and the '411/'996 claims.

using generic computers. Likewise, the second patent did not "solve any technological problem" but instead was merely directed to automating known pen and paper methodologies. *Id.* at 1380-82 (internal quotations omitted).

Here, unlike *Zillow* and IB's other cited cases, the claimed solution is not merely automating on a computer known manual processes or something done using pen and paper. Rather, the '411/'996 claims provide a specific means to improve the relevant technology, *i.e.*, the claims implement a tailored software improvement over the Figure 2-style GUI's technical problems, resulting in an improved user interface for electronic devices.

### F. IB Does Not Dispute the Overwhelming Evidence Showing the Unconventional Nature of the '411/'996 Inventions

TT's brief presented overwhelming evidence, including expert testimony, that the claims of the '411/'996 patents were not "well-understood, routine or conventional" to a person skilled in the relevant field, which demonstrates that the '411/'996 claims recite an inventive concept under step two of *Alice*. BB 5-15. Again, IB does not dispute this argument or rebut any of this evidence. Instead, IB argues that the individual claim elements are not innovative, ignoring that the claimed *combination* provides the inventive concept over the prior art. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-52 (Fed. Cir. 2016). IB's arguments on *Alice* step two similarly fail.

### G. If the ’411/’996 Patents Are Found to Be Valid and Infringed, Damages Would Need to Be Retried

IB wrongly argues that there would no reason to retry damages if there was a reversal of the district court’s § 101 decision. RB 39.

A new trial on the ’411/’996 patents will impact damages. At the first trial, IB argued that the value of the ’132/’304 patents was low based on its claim that certain products having automatic recentering were acceptable non-infringing alternatives to the ’132/’304 patents. Appx101430-101440; Appx102333-102341; Appx99304-99306; Appx99315-99323. In fact, IB made this a central theme of its case. *Id.* However, because the ’411/’996 patents are not limited to “static,” a new trial involving the ’411/’996 patents will completely eliminate IB’s argument on non-infringing alternatives, which means that damages will need to be reevaluated, and the jury will be free to assign a higher value to TT’s patents as proffered by TT’s damages expert. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1572 (Fed. Cir. 1996) (ordering district court to reconsider its royalty rate on remand in light of noninfringing alternatives).

The only case cited by IB on this topic, *Chrimar Holding Co., LLC v. ALE USA Inc.*, 732 F. App’x 876 (Fed. Cir. 2018), ironically a non-precedential opinion, does not apply because in that case, neither party sought a new trial on damages, but here TT is doing just that. 732 F. App’x at 886. Moreover, unlike here where adding the ’411/’996 patents could have an impact on damages, in

*Chrimar*, there was no evidence (or argument) that the addition of another patent could change the outcome on damages.

Moreover, failing to retry damages would violate TT's Seventh Amendment right to a jury trial. As this Court has explained, courts may not "'correct' a damages figure by extrapolating a royalty rate from the jury's lump sum damages award and multiplying that royalty rate by a revised sales base." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012); *see also Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 633 (E.D.N.Y. 2020) ("[T]o definitively conclude that the jurors agreed on a $0.25 royalty rate, in light of conflicting evidence, is a bridge too far."). Here, the jury awarded a single lump sum in its verdict. Appx93226. IB's cases—all of which involved royalty rate determinations by the Court--not a lump sum amount from a jury--are inapplicable. RB 50 n.10. Thus, the proper remedy is to remand for a new trial including a new trial on damages.

## II. THE DISTRICT COURT'S EXCLUSION OF FOREIGN DAMAGES UNDER *WESTERNGECO* MUST BE REVERSED

IB wrongly asserts that this Court must review the admissibility of expert testimony under "regional circuit precedent" and that an "abuse of discretion" standard applies (RB 24), when, in reality, this Court applies Federal Circuit law and reviews the court's ruling de novo. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013); *see also TecSec,*

*Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020).

### A. Foreign Damages Are Recoverable Under Section 271(a)

IB concedes that in *WesternGeco*, the Supreme Court found that: (1) the focus of the damages statute (§ 284) is on "the infringement," and that (2) § 271(f)(2) specifies an infringing act in the U.S. (*i.e.*, supplying a component in or from the U.S.). RB 46-47. IB argues that *WesternGeco* found that the "combined 'focus' of § 271(f)(2) and § 284 was 'on the act of *exporting components from* the United States.'" RB 47 (emphasis original). Thus, IB claims that "exporting components" was key to *WesternGeco*'s holding. IB is wrong.

The Supreme Court never ruled that the focus of these statutes is limited to "exporting components" from the U.S. Instead, it found that the focus of these statutes is on the act of ***domestic*** infringement. *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138 (2018). IB omits the subsequent clarifying sentences showing that *WesternGeco* focused on domestic infringement, not acts of "exporting components":

> In other words, the *domestic infringement* is "the objec[t] of the statute's solicitude" in this context. The *conduct* in this case that is relevant to that focus *clearly occurred in the United States*, as it was ION's *domestic act* of supplying the components that infringed WesternGeco's patents.

*Id.* (emphasis added) (citations omitted). IB does not dispute that § 271(a) details conduct that is domestic as well. RB 45 (conceding § 271(a) has a "territorial

limitation"). Thus, § 271(a) "vindicates domestic interests" no less than § 271(f), and the reasoning of *WesternGeco* applies equally to § 271(a). *WesternGeco*, 138 S. Ct. at 2138.

IB attempts to distinguish *WesternGeco* by arguing that, unlike § 271(a), § 271(f) explicitly contemplates foreign activities. RB 47. But this misses the point. *WesternGeco* held that the "overseas events" mentioned in § 271(f) "were merely incidental to the infringement" and did not have "'primacy' for purposes of the extraterritoriality analysis." 138 S. Ct. at 2138. Indeed, the Supreme Court found that "what a statute authorizes is not necessarily its focus." *Id.* The Supreme Court never hinged its decision on § 271(f)'s "limited foreign activities." RB 47.

IB's caselaw does not counsel otherwise. IB's only case, *Connecticut Nat'l Bank v. Germain*, involved neither patent law nor the presumption against extraterritoriality. 503 U.S. 249 (1992). Moreover, IB's argument that TT's cases are distinguishable because those courts failed to understand the "textual differences between § 271(a) and § 271(f)," RB 49 n.9, is incorrect. *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CV 04-1371 - LPS, 2018 WL 4804685, at *1 (D. Del. Oct. 4, 2018) ("[*WesternGeco*] has equal applicability to the direct infringement allegations pending here, as governed by § 271(a), as it did to the supplying a component infringement claims . . . governed by

§ 271(f)(2).”); *see also* BB 49-50 (citing cases). IB provides no justification for departing from those cases here.

Remarkably, the remainder of IB's arguments track Justice Gorsuch's *dissent* in *WesternGeco*. RB 45-50. For example, Justice Gorsuch disagreed with the majority and argued that § 271 has an express territorial limitation to the U.S. 138 S. Ct. at 2139-42. He also relied on the history of § 271 and the *Deepsouth Packing Co. v. Laitram Corp.* case. *WesternGeco*, 138 S. Ct. at 2142 (citing 406 U.S. 518 (1972)). The problem for IB is that Justice Gorsuch's dissent is not the law.

Accordingly, *WesternGeco* applies equally to § 271(a), which even Justice Gorsuch acknowledged when he said "[a]ny suggestion that § 271(f)(2) provides protection against foreign uses" would open the door to the same protection for "the *entire* invention in violation of § 271(a)." 138 S. Ct. at 2142.

### B. TT Was Not Permitted to Fully Pursue Its Claim of Foreign Damages, Which Was Harmful Error

IB argues that regardless of *WesternGeco*, there was no prejudicial error because TT's *WesternGeco* theory is "no differen[t]" from two other theories presented at trial. RB 43. IB is wrong. TT's damages expert, Ms. Lawton, included three theories in her expert report regarding foreign damages: (1) IB makes BookTrader when foreign users request a download from a U.S. server; (2) IB sells BookTrader in the U.S. via users' entry into a Customer Agreement; and

(3) IB makes BookTrader in the U.S. by designing and programming BookTrader in the U.S. (the *WesternGeco* theory). Appx18-19; Appx88406-88416; Appx94542-94552. Ms. Lawton's *WesternGeco* theory was not based on (1) or (2) above, as IB asserts. RB 43. Rather, it was based on BookTrader being "designed and made in the US," where all of the "programming" and "upgrades" were completed. Appx88411-88412; Appx94542-94552; *see also* Appx44 (defining *WesternGeco* theory as IB "making BookTrader at its headquarters in the United States"). This was an entirely distinct theory from (1) and (2) above.

IB also argues that TT was not prevented from presenting anything to the jury. RB 44. This is also incorrect. The court explicitly excluded Ms. Lawton from presenting her *WesternGeco* theory to the jury. Appx19; Appx94549-94552. And the jury was not instructed about foreseeable foreign damages based on this theory. Appx93208-93210. While IB argues that "the jury rejected TT's foreign damages theories," (RB 44), Ms. Lawton's *WesternGeco* theory may very well have convinced them otherwise. *See Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1297-99 (Fed. Cir. 2012).

IB's cases are inapplicable because the excluded evidence was cumulative of evidence introduced at trial. *Downing v. Abbott Labs.*, 48 F.4th 793, 805, 808 (7th Cir. 2022); *Blameuser v. Hasenfang*, 345 F. App'x 184, 187 (7th Cir. 2009). Here,

TT's *WesternGeco* evidence was not cumulative of any other evidence.[4]

### C. TT Did Not Waive Its Right to Challenge the District Court's Exclusion of Foreign Damages

IB wrongly argues that TT waived its *WesternGeco* theory by allegedly abandoning it in its post-trial reply brief. TT was never required to raise this issue in its post-trial briefing. Instead, the court's *Daubert* ruling, which was issued prior to trial, fully preserved this issue for appeal. *Fuesting v. Zimmer, Inc.*, 448 F.3d 936, 940 (7th Cir. 2006); *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 427-28 (7th Cir. 2020). TT cannot have waived something that it was never required to renew.

Even if TT's argument could be waived, exceptions to waiver would apply. The *WesternGeco* issue involves a pure question of law and has been fully briefed, before both the district court and this Court. Appx85146-85148; Appx88406-88413; Appx88638-88643; BB 48-51; RB 45-50. Such circumstances counsel against waiver. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1322-23 (Fed. Cir. 2020); *Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 496 (7th Cir. 2021). IB's authorities are misplaced. Indeed, none of IB's cases involved a

---

[4] IB argues that Ms. Lawton admitted that TT cannot recover for "use" by a customer outside of the U.S. (RB 44), but TT never sought damages for foreign *use*. Appx88415.

*Daubert* motion that was fully briefed and decided below. RB 41-42.[5]

## III. THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING PLAINTIFF TT'S MOTION FOR A NEW DAMAGES TRIAL BASED ON A FINDING THAT IB COMMITTED FRAUD

IB argues that the abuse-of-discretion standard prevents relief. RB 51, 54. However, "[a]buse of discretion results when a district court commits legal error or makes clearly erroneous factual findings." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015) (quoting *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013)). Here, the district court's opinion should be vacated because the court made both legal and factual errors.

### A. IB's Post-Trial Admissions That IB Does Not Track by Tool Used to Submit the Order Confirm That IB Misrepresented Order Tracking

IB never disputes the court's finding that "[d]uring discovery and trial, IB maintained that it accurately tracked the amount of customer trades executed through BookTrader since 2006 . . . . IB claimed to track orders based on the tool used to ***submit*** a given order to the exchange." Appx29-30 (emphasis added).

---

[5] IB also argues that any remand should be limited to determining the size of the royalty base. RB 50 n.10. This fails because Brumfield *is* challenging the $0.10 per trade royalty IB pitched to the jury. *See supra* Section I.G.

IB now concedes that it does ***not*** track orders by submits. Remarkably, IB asserts that "IBG is not responsible for TT's unfounded assumptions or failures to think through other plausible views of the evidence [on how IB tracked orders]." RB 55. But IB has ***always*** claimed to TT and the court that it tracked the number of orders submitted to the exchange via clicking along the price axis of BookTrader. Appx137295-137298. This metric, which IB claimed it produced, reflects the number of infringing trades made using BookTrader, and was discussed ***repeatedly*** during discovery. Appx93514-93515 ("[TT] already [has] the transactional data for all trades executed through BookTrader."); Appx135570 (court acknowledging that "IB agreed to produce data showing transactions executed through BookTrader").

In discovery, IB produced voluminous stats reports, each with columns labeled "submitted" that IB claimed tallied the number of orders and trades per tool. *See, e.g.*, Appx116269-116292 (stats report identifying for each tool, the number of orders "[s]ubmitted" and trades "[f]illed"). IB's 30(b)(6) witness testified that IB used a tagging mechanism that enabled IB to determine which tool submitted the order to the exchange. Appx100740.

IB's damages expert, Mr. Reed, also explained in his report that IB tracks orders by tool used to submit, not originate. Reed interviewed an IB employee,

Mr. Titov, who confirmed that IB tracked all orders submitted/placed from its tools (including BookTrader) since 2006. Appx103504; *see also* Appx85226-85230.

Finally, at trial, IB's CEO,[6] Mr. Galik, repeatedly testified that IB's stats reports tracked the number of orders ***submitted*** by each tool:

> [T]agging allows us to produce the part of the stats reports which gives us a breakdown of how many trades and ***how many orders were submitted from a specific tool***, which means ***when an order is submitted from a specific tool, it gets a tag with the name of the tool that is responsible for that order***.

Appx101373 (emphasis added); *see also* Appx101354 (same). Significantly, Mr. Galik's testimony on the stats reports lines up the very same way that anyone would interpret the 500+ stats reports that IB produced in discovery—the only common-sense interpretation of that evidence.

After trial, TT uncovered that IB's representations were false. As confirmed post-trial in Stetsenko's declaration, IB does not track orders by the tool used to submit. Appx32-33. Rather, IB tracks orders by the tool used to start, or "***originate***" the order. Appx103657.

The district made a critical error when it found that IB's misrepresentations on order tracking did not matter. Appx40. As explained below, they clearly do

---

[6] Galik previously served as Senior Vice President of Software Development from 2003–2014, was responsible for TWS starting in 2000 and worked on it to this date ("the work never stopped"). Appx101329. IB selected Mr. Galik to testify about the stats reports due to his expertise, and explicitly lay out how IB was tracking orders and trades. Appx101350-101360.

matter. Indeed, a movant under Rule 60(b)(3) need not "establish that the misrepresentation altered the outcome of the trial. It is sufficient that prejudice has occurred." *Lonsdorf*, 47 F.3d at 897; *Ty*, 353 F.3d at 536 (victim "need show only that it affected his ability to present his case, not that he would have won had the fraud or misconduct not occurred."). Thus, TT "need only show that the alleged misrepresentations foreclosed potentially promising cross-examination tactics; the misrepresentations need not be outcome-determinative, nor even intentional, to compel reversal." *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 790 (5th Cir. 2018).

Here, TT has been prejudiced by IB's gross misrepresentations. At trial, TT could have shown that IB's CEO, Mr. Galik, was lying on the stand. It could have excluded IB's transaction data. And it could have countered IB's claim that BookTrader accounted for just a small fraction of all orders submitted. Indeed, IB repeatedly relied on its transaction evidence to undercut the strong evidence demonstrating the immense value of TT's inventions. Appx135559-135566; Appx135568; Appx103522-103585.

There has to be a motive for IB carrying out their case-long misrepresentation. The only logical motive is that IB was hiding something.

### B. Accumulate/Distribute Proves That IB Has Grossly Misrepresented Its BookTrader Data to Be Something That It Is Not

IB does not dispute that Accumulate/Distribute is IB's "most valuable" tool, and concedes that Accumulate/Distribute is IB's "most important" tool. RB 54. But IB's transaction data shows that Accumulate/Distribute is only responsible for .08% of orders submitted. Appx103658. According to IB, "Main Window" accounted for 22.9% of orders submitted, whereas Accumulate/Distribute's volume is a tiny fraction of this.[7] Appx138366. And yet, IB claims and Mr. Peterffy testified, that Accumulate/Distribute is the "most valuable" and "most important" tool. RB 54; Appx98733. The most valuable tool cannot have such relatively low usage. IB continues to avoid the enormous discrepancy between Accumulate/Distribute and its trade volume.

Mr. Peterffy, IB's founder who designed most of TWS, and has been the Head of Sales at IB for 20+ years, is highly knowledgeable about Accumulate/Distribute. Appx101174. As the designer of most of TWS, he is intimate with most of the tools in TWS. As Head of Sales, he has received sales reports on a weekly basis from 12-50 salespeople over 20+ years (totaling 25k+

[7] The 22.9% number was submitted by IB at trial, but TT's review of the transaction data shows that "Main Window" accounted for 33.36% of orders submitted, and this number rises to 38.95% when including Main Window's approximated portion of "Plain Vanilla" from 2008-2010.

sales reports), and he takes the sales reports seriously. Appx101110-101111; Appx101146-101158. It is undisputed that Accumulate/Distribute is a serious tool that submits serious trade volume.

The following necessarily flows from these facts. On the one hand, by way of Mr. Peterffy, it is only logical that Accumulate/Distribute is a serious tool that submits serious trade volume. On the other hand, IB concedes the virtually nonexistent trade volume for Accumulate/Distribute reflected in the stats reports. These data points are diametrically opposed. The explanation for this is clear: IB admits that IB does not track order by the tool used to submit the order to the exchange. RB 54. This means that other tools must be getting credit. In other words, in the case of Accumulate/Distribute, some other tool is getting credit for orders submitted by Accumulate/Distribute. Accumulate/Distribute is the proverbial canary in coal mine, and IB has grossly misrepresented the BookTrader data to be something that it is not.

The Court wrongly set aside these massive red flags from IB. Appx36-37 (dismissing disparity between Accumulate/Distribute data and stats reports); Appx40 (holding that how IB tracks orders "does not impact BookTrader trades"); While the district court and IB blamed TT for not uncovering this massive disparity sooner, TT did not know the reason for such disparity. Appx100610-100613. Rather, this only became evident post-trial, after TT started decoding

Stetsenko's cryptic trial testimony. Appx93239-93242; Appx97512-97514; Appx103629-103636; Appx103656-103661.

### C. TT Did Not Have the Burden to Discover IB's Misrepresentations Sooner

IB argues that the court correctly denied TT's motion because "TT had means prior to trial to discover that IB may not in fact track orders by order entry tool and it could have crossed IB's witnesses about this at trial." RB 54 (quotations omitted); *see also* Appx36 (court denying motion based on TT's "own failure to ask adequate questions during discovery" and finding it "unclear [] why this investigation could not have been performed earlier"); Appx37 (criticizing TT for "its own failure to ferret out information during discovery").

This fails on the law and the facts. On the facts, as detailed in Section III.A, TT took depositions and issued written discovery on the issue, and IB repeatedly assured TT and the court that it produced the total number of orders submitted through BookTrader, when that was false. Nor did TT learn of IB's alleged 38 order entry tools until trial—IB's stats reports show far more tools and frequently changed, and the tool names do not mirror IB's manuals. Appx116269-116323 (Plain Vanilla); *compare* Appx115574-115624.

On the law, IB and the court are also wrong. Courts, including the Seventh Circuit, have repeatedly rejected IB's argument, finding that Rule 60(b)(3) includes no timeliness component "in discovering the fraud, but only that the

motion be made within a reasonable time [after discovery]." *Lonsdorf*, 47 F.3d at 898 (vacating because "district court applied an incorrect standard in denying Lonsdorf's claim under Rule 60(b)(3) on grounds Lonsdorf had failed to discover the misrepresentation in a diligent and timely fashion. . . . To the contrary, the record reflects that during discovery many documents were produced, and Lonsdorf had not previously realized that a falsified document existed."); *see also Cap Exp., LLC v. Zinus, Inc.*, 996 F.3d 1332, 1339-40 (Fed. Cir. 2021) (criticizing Ninth Circuit for grafting on diligence requirement, as Rule 60(b)(3) does not mention diligence).

Indeed, "courts have held that a party has the right to assume that discovery responses are accurate and complete." *Viskase Corp. v. Am. Nat'l. Can Co.*, 979 F. Supp. 697, 703 (N.D. Ill. 1997), *aff'd*, 261 F.3d 1316 (Fed. Cir. 2001); *see also Fields v. City of Chicago*, 981 F.3d 534, 556 (7th Cir. 2020). ("Fields's counsel would have had no basis to doubt those statements." (quotations omitted)).

Here, IB provided extensive discovery, over 3 million pages, and aggressively prevented TT from obtaining information on IB products besides BookTrader that could have obtained credit for submits. Appx41; Appx135569-135572. It was not TT's duty to uncover IB's false representations about its transaction data—it was IB's duty to not make misrepresentations in the first place. *Lonsdorf*, 47 F.3d at 898 ("A litigant . . . should not be required to assume that

[misrepresentations] are being produced by an opposing party."). "[I]n litigation the burden is on the attorney who discovers client dishonesty to take corrective action." *Id.* Indeed, "[t]he judicial system is premised on the honest, good faith efforts of the parties involved." *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05-cv-4088, 2011 WL 722467, at *6 (N.D. Ill. Feb. 23, 2011).

Tellingly, IB cites no caselaw saying that it was TT's burden to discover the evidence of IB's misconduct earlier.

### D. IB's Other Arguments Are Designed to Distract from IB's Own Misrepresentations

IB's other attacks fail. First, IB claims that TT changed arguments regarding IB's misrepresentations. RB 52. Not so. The arguments presented to this Court were presented below. Appx93233-93246; Appx103629-103637. Nor has TT disavowed its prior allegations. Here, the evidence demonstrates that IB committed fraud, perjury, and discovery misconduct.

Second, TT did not abandon the hotkey framework ("HKF") arguments. Rather, the HKF is the source code that determines that the "originating" tool gets credit for the order, instead of the "submitting" tool. Appx93233. In any event, the court's decision regarding the HKF was erroneous because to this day, IB has not produced the HKF source code responsible for tagging the "originating" tool. Appx93765-93767.

## CONCLUSION

For the foregoing reasons, this Court should: (1) reverse the holding that the ’411/’996 patents are ineligible under § 101; (2) reverse the exclusion of foreign damages; (3) reverse the holding that TT failed to establish IB’s attempted fraud; and (4) remand for a new trial on damages and liability with regard to the ’411/’996 patents.

Date: January 23, 2023

*/s/ Michael D. Gannon*
Leif R. Sigmond, Jr.
Michael D. Gannon
Jennifer M. Kurcz
*lsigmond@bakerlaw.com*
*mgannon@bakerlaw.com*
*jkurcz@bakerlaw.com*
Baker & Hostetler LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
(312) 416-6275

Alaina J. Lakawicz
*alakawicz@bakerlaw.com*
Baker & Hostetler LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
(215) 568-3100

*Attorneys for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 22-1630

**Short Case Caption:** Brumfield v. IBG LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6370 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 01/23/2023

Signature: /s/ Michael D. Gannon

Name: Michael D. Gannon

Save for Filing